UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

| Case No. | 2:16-cr-00055-CAS | Date | July 6, 2016 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| Catherine Jeang | Not Present | Julius Nam, Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Brittany Grigsby | Not | | X | Erin Darling, DFPD | Not | | X |

**Proceedings:** (IN CHAMBERS) - DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (Dkt. 24)

## I. INTRODUCTION

On February 5, 2016, a federal grand jury returned an indictment against defendant Brittany Grigsby ("Grigsby" or "defendant"), charging Grigsby with the following four counts: (1) unlawful possession of device-making equipment, in violation of 18 U.S.C. § 1029(a)(4); (2) possession of fifteen or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3); (3) aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1); and (4) possession of stolen mail, in violation of 18 U.S.C. § 1708.

On March 14, 2016, defendant filed the instant motion to suppress evidence. Dkt. 24 ("Motion"). On April 12, 2016, the government filed an opposition to defendant's motion. Dkt. 37 ("Opp'n"). On April 19, 2016, defendant filed a reply. Dkt. 39 ("Reply"). On April 22, 2016, the government filed a sur-reply. Dkt. 41 ("Sur-Reply"). On April 25, 2016, the Court held oral argument on the instant motion and requested supplemental briefing.

On April 28, 2016, the government filed a supplemental brief, Dkt. 43 ("Gov.'s Suppl. Brief"), and on April 29, 2016, defendant filed a supplemental declaration and supporting exhibits, Dkt. 44. On May 2, 2016, the Court held an evidentiary hearing, during which one

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

witness, Officer Jared Atkinson, testified.[1] Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

The following background information is based upon the three sworn declarations of Officer Jared Atkinson, as well as the sworn testimony that Atkinson delivered at the evidentiary hearing on the instant motion:

On January 25, 2016, at approximately 1:20 a.m., El Monte Police Department ("EMPD") Officers Jared Atkinson and Ryan Abbott detained and questioned a man named Samuel Soto on the sidewalk on Valley Boulevard in front of the M Motel in El Monte, California. First Declaration of Officer Jared Atkinson ("Atkinson Decl. I"), at ¶ 7. Officer Atkinson states that while he was questioning Soto to determine whether Soto was trespassing at the motel, defendant Grigsby arrived at the scene and parked her car in the parking lot of a nearby 7-Eleven store. Id. at ¶ 7; see also Second Declaration of Officer Jared Atkinson ("Atkinson Decl. II"), at ¶ 2. Defendant Grigsby "walked toward [Atkinson] and told [him] that she had arrived to pick up Soto." Atkinson Decl. II at ¶ 2. Atkinson describes his response to Grigsby as follows:

> I responded by instructing defendant to return to her vehicle and wait until I come to speak with her. I instructed defendant to return to her vehicle because Officer Abbott and I were still investigating Soto, and her continued presence could be a distraction and a safety concern for Officer Abbott and myself. I also wanted to separate Soto and defendant so that I could check Soto's story against defendant's to see if Soto was lying about what he was doing in the area. The purpose of asking defendant to return to her vehicle was not to detain or arrest her, but simply to place distance between Soto and defendant for officer safety and investigation of Soto.

Id. at ¶ 3. Atkinson then approached defendant, who was beside her parked car in the 7-Eleven parking lot, and "explained that [he] needed her name and date of birth to document to whom [he] would be releasing Soto." Id. at ¶ 4. Defendant "voluntarily provided [Atkinson] with the

---

[1] In her reply, defendant had argued that an evidentiary hearing was warranted in order to determine (1) whether defendant's vehicle posed a public safety threat; (2) whether the police here were motivated by an investigatory motive, and (3) whether defendant was lawfully arrested. See Reply at 13-14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

requested information" and her driver's license, and then walked back with him to Soto. Id. Atkinson avers that "[a]t this time, [he] did not hold any suspicion, or ha[ve] any information, about defendant's involvement in a crime," and accordingly defendant "was not under arrest and was free to leave at any time." Id.

While defendant stood with Officer Abbott and Soto, Atkinson walked over to his police vehicle and conducted a records check. Id. at ¶ 5. The records check revealed that defendant Grigsby was a named suspect in a 2015 El Monte burglary case. Atkinson Decl. I at ¶ 9. More specifically, Atkinson testifies as follows:

> I read in . . . two [separate] reports that, in October 2015, defendant rented a storage unit at a self-storage facility in El Monte where a number of storage units were burglarized. I also read that a person known to be defendant's boyfriend was seen on surveillance footage removing property from an area where a number of units were broken into. I also read that a number of items stolen from other storage units were recovered during a subsequent check of defendant's storage unit by the owner of the facility. Furthermore, I read that when confronted by the facility management about the burglary allegation, defendant fled. After reading that the investigation into this burglary was still active, and that defendant and her boyfriend were the two persons suspected to have committed burglary at the storage facility, I concluded that there was probable cause to arrest defendant for the 2015 commercial burglary, a felony violation of California Penal Code, Section 459.

Id. at ¶ 7.

Based upon the foregoing, Atkinson "approached defendant and told her that detectives needed to speak with her about a burglary case," and defendant "immediately recognized what [he] was talking about and stated that it was her boyfriend who was to be blamed for the burglary." Atkinson Decl. I at ¶ 10. Atkinson then placed handcuffs on defendant, at which point she stated, "I knew I was wanted." Id. Atkinson then asked defendant if she needed anything from the vehicle she had parked at the 7-Eleven, to which she responded, "Yeah, my phone." Id.

Atkinson drove his police vehicle from the M Motel toward the 7-Eleven parking lot with defendant in the back seat. Atkinson avers that "[b]ecause [1] defendant was under arrest, [2] there was no other licensed driver [who] was present to drive defendant's vehicle from the 7-Eleven parking lot, and [3] defendant would not have permission to leave her vehicle in the

**CRIMINAL MINUTES - GENERAL**

'O'

7-Eleven parking lot indefinitely, [Atkinson] decided to have defendant's vehicle towed and impounded, and determined that an inventory of the contents of defendant's vehicle would be required." Id. at ¶ 12. Atkinson avers that he "determined that impoundment was necessary because, based on [his] experience as a patrol officer in El Monte, [he] knew the neighborhood surrounding the 7-Eleven store at 10008 Valley Boulevard to be a high-crime area, and leaving defendant's vehicle in the 7-Eleven parking lot in early morning hours for the following 24 to 48 hours, or possibly longer, would expose the vehicle to vandalism, burglary, and automobile theft, as well as inconvenience 7-Eleven's business activity." Id.

     As they were approaching defendant's vehicle, Officer Atkinson asked defendant if there was anything illegal inside her vehicle, to which she said, "No." Id. at ¶ 14. Officer Atkinson avers that he asked this question in order to learn whether "there were any dangerous items in the vehicle that could threaten [his] safety," as well as to give defendant an opportunity to "come clean" in case he did find something illegal in her vehicle. Id. In addition, Officer Atkinson asked, "Okay if I search the car?", to which defendant responded: "No, I don't want you searching my car. I have rights." Id. at ¶ 15. Officer Atkinson states that although he asked defendant if she would be okay with a search of her vehicle, he already "knew that, having arrested her, [he] had authority to impound her vehicle and conduct an inventory search of her vehicle prior to the impoundment." Id. at ¶ 15. Accordingly, Officer Atkinson explained to defendant that because she was under arrest and her vehicle was parked at 7-Eleven, the vehicle would be towed pursuant to California Vehicle Code, Section 22651(h)(1), and an inventory of the items inside the vehicle would be required.[2] Id. Atkinson then asked defendant to whom the vehicle belonged, and defendant responded that it was a rental vehicle that her father had rented. Id.

     Officer Atkinson then initiated an inventory search of defendant's vehicle in the 7-Eleven parking lot in order "to make sure all valuable items were recorded and documented." Id. at ¶

---

[2] California Vehicle Code, Section 22651(h) provides that "[w]hen an officer arrests a person driving or in control of a vehicle for an alleged offense and the officer is, by this code or other law, required or permitted to take, and does take, the person into custody," the officer "may remove a vehicle located within the territorial limits in which the officer . . . may act . . . ." See Cal. Veh. Code § 22651(h); see also Atkinson Decl. at ¶ 5. According to EMPD procedure, if an officer determines that a vehicle should be removed and impounded pursuant to Section 22651(h) and the officer's community caretaking function, then an officer must "conduct a thorough inventory search of any personal property and the contents of any closed containers within the vehicle. . . ." Atkinson Decl. I at ¶ 5; see also Dkt. 37-1 (EPMD Policy), at § 510.4. A California Highway Patrol Vehicle Report ("Form CHP 180") must also be completed, and an inventory list must be prepared and included with a police report. Atkinson Decl. I at ¶ 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

'O'

16. In conducting the inventory search, Atkinson found a small orange bag on the front passenger seat that "looked like it could contain valuable items." Id. Atkinson opened the orange bag "to see if it contained any items of high value and to determine whether [he] should bring it with [him] to defendant's booking to prevent theft of defendant's valuables." Id. at ¶ 17. However, upon opening the bag, Atkinson found approximately 300 ATM, credit, and debit cards with different people's names. Id. Separately, Officer Atkinson also saw multiple pieces of mail that were "plainly visible" inside an open bag on the floor of the front passenger seat. Id. He grabbed about a dozen pieces of mail from the bag, saw that they were addressed to people other than defendant, and placed the mail on the front passenger seat. Id.

Atkinson avers that upon seeing the contents of the orange bag, he "determined that there was probable cause to believe that defendant had committed identity theft in violation of California Penal Code, Section 530.5." Id. at ¶ 18. Atkinson then brought the orange bag to defendant, who had remained in the back of his police vehicle, and showed its contents to her, asking whether the bag was what she did not want him to find. Id. She replied, "That's all my boyfriend's stuff." Id. Officer Atkinson then told defendant that she was also under arrest for identity theft pursuant to Section 530.5. Id.

After notifying defendant that she was under arrest for identity theft, Officer Atkinson returned to defendant's vehicle to continue searching the vehicle. Id. at ¶ 19. Officer Atkinson found that all the mail inside the large bag on the floor of the front passenger seat, including the approximately twelve pieces of mail he had taken from the bag and placed on the front passenger seat, contained pre-approved credit cards addressed to different people in cities neighboring El Monte, including Temple City, Alhambra, and Arcadia. Id.

Officer Atkinson continued his search in the trunk area of the vehicle and found a file cabinet in which he saw folders containing handwritten notes with different people's personal identifying information, various mail matter, credit cards, and financial statements. Id. at ¶ 20. Atkinson also found in the trunk a gray carry-case, which contained an embossing machine that could be used to stamp names and numbers on blank credit cards, rolls of silver tape, and a small notebook filled with personal names and other personal identifying information. Id.

Officer Abbott (who did not participate in the search of defendant's vehicle) and Officer Atkinson seized the orange bag containing approximately 300 ATM, credit, and debit cards, multiple pieces of mail with pre-approved credit cards addressed to different people, the file cabinet with all its contents, and the gray carry-case containing the embossing machine and the small notebook. Id. at ¶¶ 21-22. The officers then called a tow truck to have defendant's vehicle towed and impounded. Id. at ¶ 22.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

## III. DISCUSSION

Through the instant motion, defendant seeks to suppress "all evidence, and fruits thereof, obtained as a result of the unlawful search of [defendant'] rental vehicle." Motion at 1. Defendant argues that the evidence should be suppressed for the following reasons: first, because Officer Atkinson's search was not actually conducted in order to inventory the items in defendant's vehicle, but rather "to search the car for evidence of a crime"; and second, because "[e]ven if the search had not been conducted for an investigatory purpose, the search would still fail to meet the requirements of a valid inventory search." Id. In her reply and at oral argument, defendant also argued that prior to initiating the search of the vehicle, the officers unlawfully seized defendant without reasonable suspicion, and further arrested her without probable cause. For the reasons articulated in the discussion that follows, the Court rejects defendant's various arguments, and accordingly denies the instant motion to suppress evidence.

### A. Whether EMPD Seized Defendant without Reasonable Suspicion

In her reply, defendant argues for the first time that Officer Atkinson detained defendant without reasonable suspicion, rendering her subsequent arrest and the search of her vehicle unconstitutional. See Reply at 7-9. Specifically, defendant argues that "both a clear show of authority and a submission occurred" in the interaction between the EMPD officers and defendant, such that the interaction constituted an unlawful "seizure" under the Fourth Amendment because Atkinson did not have reasonable suspicion to detain defendant for questioning.

In defendant's view, Officer Atkinson's instruction that defendant "return to her vehicle and wait until [he] come[s] to speak with her," Atkinson Decl. at ¶ 7, constituted a "clear show of authority" that would leave a reasonable person in defendant's position to feel that he or she was not free to leave. Id. at 8. Defendant further argues that Officer Atkinson's instruction is "analogous" to the instruction at issue in United States v. Hernandez, wherein an officer who saw a suspect "jump over a fence into an alley" stated, "Police. Stop right there. I need to talk to you." 27 F.3d 1403, 1406 (9th Cir. 1994) (holding that despite a showing of authority, there was no "seizure" because defendant did not actually submit to the show of authority). Specifically, defendant contends that

> [t]he word "police" is effectively conveyed by Officers Atkinson and Abbott's uniforms and marked black and white police vehicle. [Defendant] was then told to wait by her car and that Officer Atkinson would speak with her. Again, like Hernandez where the officer told the defendant to stop because he needed to talk to the defendant,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

> Officer Atkinson told [defendant here] to wait by a specified location because Officer Atkinson needed to talk to her. Thus, there was a detention within the meaning of the Fourth Amendment at the moment Officer Atkinson instructed [defendant] to wait by her car for further questioning and she submitted to that show of authority by complying.

Reply at 8. Defendant then argues that her "seizure" by Officer Atkinson was not supported by reasonable suspicion and was therefore unlawful. In a sur-reply, the government contends that defendant was not under arrest and was free to leave until she was formally arrested and handcuffed after Officer Atkinson discovered that she was a suspect in a 2015 burglary incident.

Of course, "evidence obtained as a direct or indirect result of [unlawful] invasions is considered 'fruit of the poisonous tree' and is inadmissible under the exclusionary rule." United States v. McClendon, 713 F.3d 1211, 1215 (9th Cir. 2013). Here, based upon a review of Officer Atkinson's testimony, the Court cannot conclude that Atkinson's instruction that Grigsby return to her vehicle in the 7-Eleven parking lot constituted a "show of authority" that "restrained [Grigsby's] liberty," Terry v. Ohio, 392 U.S. 1, 19 n.16, such that "a reasonable person would have believed that [she] was not free to leave," United States v. Mendenhall, 446 U.S. 544, 554 (1980) (noting that "[e]xamples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled"). Following defendant's initial interaction with the officers, defendant returned to her vehicle in a public space, on another property, seemingly outside the view of the officers, where she was free to leave in her vehicle without facing any legal consequences. As the government notes, defendant chose to stay and wait for Officer Atkinson and then accompany him to meet with Soto, presumably because she wanted to pick up Soto and expected that Soto would be released to her, and not because her freedom to move was restrained.

"In short, nothing in the record suggests that [defendant] had any objective reason to believe that she was not free to end the conversation in the [7-Eleven parking lot] and proceed on her way, and for that reason [the Court] concludes that [Atkinson's] initial approach [and interaction with defendant] was not a seizure." Mendenhall, 446 U.S. at 555. The Court's "conclusion that no seizure occurred is not affected by the fact that [Grigsby] was not expressly told by the [officers] that she was free to decline to cooperate with their [request that she return to and wait by her vehicle], for the voluntariness of her [decision to remain in the parking lot] does not depend upon her having been so informed." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

**B.     Whether EPMD Had Probable Cause to Arrest Defendant**

In her reply, defendant also questions whether Officer Atkinson had probable cause to arrest her based only upon the information gleaned from the two EMPD database reports that he reviewed just prior to the arrest. In its sur-reply, the government argues that Officer Atkinson's probable cause determination was reasonable because he saw in the law enforcement databases that a person matching defendant's name, date of birth, and driver's license information was a suspect named in a 2015 commercial burglary investigation, and his further reading of the reports led him to believe that defendant had committed the burglary offense. Sur-Reply at 8-9 (citing Atkinson Decl. II at ¶¶ 5, 6, 8).

The police may arrest a person without a warrant if the arrest is supported by probable cause. United States v. Buckner, 179 F.3d 834, 837 (9th Cir. 1999). "Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime." United States v. Garza, 980 F.2d 546, 550 (9th Cir. 1992) (citation and quotation marks omitted). Based upon a review of the additional testimony and exhibits submitted in the government's sur-reply and at the evidentiary hearing, the Court concludes that Officer Atkinson's probable cause determination was reasonable. According to his testimony, Atkinson read in the original and supplemental EMPD crime reports for the October 2015 burglary investigation that (1) defendant was a suspect specifically named by the management of the burglarized self-storage facility, (2) defendant had rented a storage unit in the facility, (3) defendant's boyfriend was seen on surveillance footage removing property from an area where a number of units were broken into, (4) a subsequent check of defendant's unit by the facility owners revealed that a number of the stolen items were in defendant's unit, and (5) defendant fled upon being confronted with evidence of burglary. See Atkinson Decl. II at ¶ 6; see also Sur-Reply, Ex. 5.

The facts in the two crime reports were "sufficiently detailed to cause a reasonable person to believe a crime had been committed and the named suspect [i.e., defendant Grigsby] was the perpetrator." Butler, 74 F.3d at 921 (citation and quotation marks omitted). Accordingly, the Court concludes that probable cause existed for Grigsby's arrest for robbery in violation of California Penal Code section 459.

**C.     Whether the Search of Defendant's Vehicle was Unreasonable**

The gravamen of the instant motion to suppress is that Officer Atkinson's warrantless search of defendant's vehicle in the 7-Eleven parking lot—which followed defendant's arrest

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

'O'

based upon Atkinson's review of the two crime reports—was an unreasonable and impermissible search under the Fourth Amendment.

### 1. Whether Impoundment of the Vehicle and Initiation of an Inventory Search was Justified

#### i. Relevant Legal Standard

"Because warrantless searches and seizures are *per se* unreasonable, the government bears the burden of showing that a warrantless search or seizure falls within an exception to the Fourth Amendment's warrant requirement." United States v. Cervantes, 703 F.3d 1135, 1141 (9th Cir. 2012). Under the "community caretaking" exception to the Fourth Amendment's warrant requirement, "police officers may impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic." Miranda v. City of Cornelius, 429 F.3d 858, 864 (9th Cir. 2005) (internal quotation marks omitted).

"Whether an impoundment is warranted under th[e] community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft." Id. at 864; see also United States v. Jensen, 425 F.3d 698, 706 (9th Cir.2005) ("Once the arrest was made, the doctrine allowed law enforcement officers to seize and remove any vehicle which may impede traffic, threaten public safety, or be subject to vandalism."); Hallstrom v. City of Garden City, 991 F.2d 1473, 1477, n.4 (9th Cir. 1993) (impoundment of arrestee's car from private parking lot "to protect the car from vandalism or theft" was reasonable under the community caretaking function). Thus, "[a] driver's arrest . . . is not relevant except insofar as it affects the driver's ability to remove the vehicle from a location at which it jeopardizes the public safety or is at risk of loss." Miranda, 429 F.3d at 864.

"Once a vehicle has been legally impounded, the police may conduct an inventory search, as long as it conforms to the standard procedures of the local police department." Cervantes, 703 F.3d at 1141 (citation omitted); United States v. Caseres, 533 F.3d 1064, 1074 (9th Cir. 2008) ("A lawfully impounded vehicle may be searched for the purpose of determining its condition and contents at the time of impounding. Anything observed in the vehicle during the inventory search is admissible against the defendant.") (internal citation omitted). However, "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." Florida v. Wells, 495 U.S. 1, 4 (1990).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

    **ii.**    **Analysis**

Defendant argues in her motion that (1) Officer Atkinson's impoundment and subsequent search of the car was impermissibly motivated by "investigatory intent" and not by a desire to take inventory pursuant to the community caretaker exception, Motion at 5; and that (2) even if the initiation of the search was not impermissibly motivated by investigatory intent, the search itself was unlawful because the inventory procedures of the EMPD were not properly followed.

    *a.*    *Initiation of the Inventory Search*

In support of her argument that the initiation of the inventory search was impermissibly motivated by "investigatory intent" and not by a desire to take inventory pursuant to the community caretaker exception, defendant first points to three questions posed by Officer Atkinson that purportedly reveal an investigatory motive.

First, Officer Atkinson asked defendant if she had anything illegal in her vehicle, as well as whether she would be "okay" if he searched her vehicle, to which she replied, "No, I don't want you searching my car. I have rights." Atkinson Decl. at ¶¶ 14, 15. Defendant contends that Atkinson's questions "indicat[e] that [Atkinson] wanted to search the car for evidence of a crime and not to inventory the car." Motion at 5. The government, however, argues that "[i]n the context of [the] lawful impoundment and inventory search that w[as] about take place, [Atkinson's] two questions cannot be interpreted to signify some overarching investigatory intent." Opp'n at 13. In support of this contention, the government cites to Atkinson's declaration, wherein he testifies as follows:

> When I asked defendant [whether there was anything illegal inside her vehicle], I had not formed any suspicion of illegal conduct by defendant other than the 2015 burglary for which she was arrested. I asked this question because I wanted to know if there were any dangerous items in the vehicle that could threaten my safety, and to give defendant an opportunity to come clean in case I did find something illegal in her vehicle. My intent was not to investigate any possible crime, but to quickly and safely secure the vehicle and its contents before impoundment.

Atkinson Decl. at ¶ 14.

Defendant also argues that a third question that Officer Atkinson asked—i.e., whether the ATM, credit, and debit cards in the orange bag were what defendant did not want him to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

find—further indicates that "the motivating factor in searching the car was investigation." Motion at 5. However, Officer Atkinson avers that he only asked this question after he "determined that there was probable cause to believe that defendant had committed identity theft in violation of California Penal Code, Section 530.5." Atkinson Decl. at ¶ 18. The government accordingly contends that Atkinson's question "cannot be understood to retroactively characterize the officer's intent when he decided to impound and inventory defendant's vehicle without any knowledge of what was inside the vehicle." Opp'n at 14.

Ultimately, the Court is unpersuaded that Officer Atkinson's questions demonstrate an impermissible investigatory motive behind the initiation of his inventory search pursuant to the community caretaker exception. As the government rightly notes, the various factors that Atkinson testifies to having considered at the time—i.e., the existence of the applicable EMPD policy, defendant's arrest based upon the burglary crime reports, the location of the vehicle on private property where an impoundment warning was prominently displayed, the apparent lack of an immediately available licensed driver to take custody of the vehicle after 1:20 a.m., the purportedly high-crime area where the vehicle was parked, and the possibility of theft and vandalism against defendant's vehicle—collectively justified impoundment of the vehicle and the initiation of an inventory search of defendant's vehicle under the community caretaker exception.[3] See Ramirez v. City of Buena Park, 560 F.3d 1012, 1025 (9th Cir. 2009) ("Leaving

---

[3] In light of the totality of the circumstances, including the late hour of the arrest and the parking lot's location in a purportedly high-crime neighborhood, Officer Atkinson was not required to tow the vehicle from the parking lot before initiating the inventory search. Cf. United States v. Prescott, 599 F.2d 103, 104 (5th Cir. 1979) (affirming nighttime inventory search while vehicle was still on the highway awaiting towing and holding that "[p]olice may lawfully conduct such searches while the vehicle is still on the highway awaiting towing, a precaution that may be necessary to protect the property, the police or the public while the vehicle is abandoned, or even while it is being towed."); see also United States v. Petty, 367 F.3d 1009, 1012 (8th Cir. 2004) ("[A] decision to impound or inventory" need not be "made in a 'totally mechanical' fashion.") (quoting Wells, 495 U.S. at 4). Furthermore, the court notes—despite defendant's suggestion to the contrary—that the impounded vehicle need not "pose[] a public safety threat" in order for the community caretaker exception to apply here. As explained *supra*, "[o]nce the arrest was made, the doctrine allowed law enforcement officers to seize and remove any vehicle which *may . . . be subject to vandalism*." Jensen, 425 F.3d at 706 (emphasis added). Here, Officer Atkinson avers that he "knew the neighborhood surrounding the 7-Eleven store at 10008 Valley Boulevard to be a high-crime area, and leaving defendant's vehicle in the 7-Eleven parking lot in early morning hours for the following 24 to 48 hours, or possibly longer, would expose the vehicle to vandalism, burglary, and automobile theft, as well as inconvenience 7-Eleven's business activity." Atkinson Decl. I at ¶ 12.

[defendant's] car in the drugstore parking lot would have made it an easy target for vandalism or theft" such that officer's "concern that Buena Park might be held liable if [defendant's] car was stolen, vandalized, or some harm came to it was reasonable"); Hallstrom v. City of Garden City, 991 F.2d 1473, 1477 n.4 (9th Cir. 1993) ("[I]t was not unreasonable for the arresting officers to protect the car from vandalism or theft by having it towed" from a parking lot.); United States v. Jensen, 425 F.3d 698, 706 (9th Cir. 2005) (officer's concerns about vandalism were reasonable).

Given these justifications, the Court rejects defendant's contention that the "impoundment of the vehicle was unconstitutional because the police failed to permit [defendant's] father or Fox Rent a Car to pick up the vehicle." Reply at 12. Specifically, defendant argues that "[a]lthough the reasonableness of impoundment does not turn solely on the 'existence of alternative less intrusive means,' " such "less intrusive means were clearly available" here. Id. (citation omitted). However—as defendant appears to concede—the EMPD is not prohibited from impounding a vehicle and conducting an inventory search simply because an alternative, less intrusive means may be available. Defendant cites no authority providing otherwise, relying instead upon the EMPD's own policy, which states only that "*[w]hen circumstances permit,* for example when towing a vehicle for parking or registration violations, the handling employee should, prior to having the vehicle towed, make a good faith effort to notify the owner of the vehicle that it is subject to removal." Dkt. 37-1 (EPMD Policy), at § 510.2. This portion of the EMPD policy does not require that Officer Atkinson make an affirmative effort to seek an alternative to impoundment, particularly given the late hour and the location at which the impoundment occurred. Simply put, "[b]ecause the owner [of the vehicle] was not present, the officers were not required to consider less intrusive alternatives to impoundment." United States v. Moskovyan, 618 Fed. App'x 331, 331-32 (9th Cir. 2015) (citing Miranda, 429 F.3d at 865 n. 6). "Accordingly, the impoundment was justified." Id.

Finally, even if Officer Atkinson was, at least in part, subjectively motivated by an investigatory intent, "the presence of [such] an investigative motive does not [necessarily] invalidate [an otherwise valid and proper] inventory search." United States v. Bowhay, 992 F.2d 229, 231 (9th Cir. 1993). As the Ninth Circuit explained in Bowhay, "[w]hen the police conduct would have been the same regardless of the officer's subjective state of mind, no purpose is served by attempting to tease out the officer's 'true' motivation." Id. Accordingly, because the relevant search in Bowhay was "a valid inventory search," the court found it unnecessary to "consider the other proffered justifications for the search." Id. In the Ninth Circuit's view, doing so would only "[p]enaliz[e] officers who are candid enough to admit that they hope to find evidence of a crime," and "can only encourage obfuscation and dishonesty, without protecting reasonable expectations of privacy." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

'O'

So, too, does the Court here find it unnecessary to tease out Atkinson's internal, subjective motivation, so long as (1) initiation of the investigatory search was legally justified under the circumstances, and (2) the search was properly conducted. See also Colorado v. Bertine, 479 U.S. 367, 372 (1987) (holding that Fourth Amendment is satisfied so long as officer conducting inventory search followed standardized procedures, was not acting in "bad faith or for the sole purpose of investigation," and is fulfilling some community caretaker purpose). Having found that initiation of the investigatory search was legally justified, the Court turns to the question of whether the search was properly conducted.

### b. Whether the Search Failed to Meet the Requirements of a Valid Inventory Search and Must be Invalidated on Such Grounds

Defendant argues that "[e]ven if the search had not been conducted for an investigatory purpose, the search would still fail to meet the requirements of a valid inventory search." Motion at 5. Specifically, in her reply and at oral argument, defendant listed several specific ways in which the impoundment and Officer Atkinson's search of defendant's vehicle purportedly failed to comport with the EMPD's inventory policy.[4] See Reply at 10-12.

For example, defendant argues that Officer Atkinson failed to comply with EMPD inventory policy because he failed to inventory "all property" in the vehicle. Id. at 10 (citing Opp'n, Ex. 1 (EMPD Policy stating that "*[a]ll property* in a stored or impounded vehicle shall be inventoried and listed on the vehicle storage form," and that "[m]embers conducting inventory searches should be as thorough and accurate as practical in preparing an itemized inventory") (emphasis added). Specifically, defendant contends that some of the items that Officer Atkinson mentions as having been inside the car during the search—such as a "large purse or shoulder bag," as well as "several duffle bags" in the trunk of the vehicle which contained clothing but no "valuables or dangerous items"—do not appear on the inventory list that was ultimately completed pursuant to the inventory search. See Atkinson Decl. at ¶¶ 17,

---

[4] Defendant's initial motion does not point to specific ways in the which the search failed to meet the relevant requirements, conclusorily stating only the following:

> The discovery fails to indicate that the requirements were met. See Exhibit B. Thus, the items recovered during the search do not meet the requirements of an inventory search and must be suppressed.

Motion at 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

20. Rather, defendant contends that the "supposed inventory list . . . appears to contain multiple documents listing *only items which have evidentiary value* in this case." Reply at 11 (emphasis in original). In defendant's view, "[b]ecause Officer Atkinson failed to inventory all property found in the vehicle, and he also failed to inventory any property whatsoever on the [separate] vehicle storage form, the search failed to comply with the inventory policy and cannot be upheld as a proper inventory search." Id. at 12.

Defendant effectively seeks to suppress all evidence obtained during the inventory search—including evidence that was properly accounted for in the final inventory list—due to Officer Atkinson's purported failure to document "all property" after the search was complete. At oral argument, the government directed the Court to the decision of the Eighth Circuit in United States v. Taylor, 636 F.3d 461, 465 (8th Cir. 2011), wherein the court explained that "[e]ven if police fail to adhere to standardized procedures, the search is nevertheless reasonable provided it is not a pretext for an investigatory search." Here, in other words, Officer Atkinson's failure properly to account of each and every piece of property does not itself invalidate the search; "[t]here must be something else; something to suggest the police raised the inventory-search banner in an after-the-fact attempt to justify a simple investigatory search for incriminating evidence." United States v. Rowland, 341 F.3d 774, 780 (8th Cir. 2003) (internal quotation marks and citation omitted). Upon consideration of the relevant testimony and evidence, the Court does not find "something else" from which one may infer an impermissible investigatory intent; accordingly, in the Court's view, even a technical failure to sufficiently identify each and every piece of property in the vehicle does not, standing alone, provide grounds for suppressing all of the evidence obtained pursuant to the otherwise valid inventory search, nor does any such failure provide sufficient grounds for inferring an impermissible investigatory intent behind the initiation of the search.[5]

---

[5] In addition, the government argues that because the *initiation* of the inventory search was proper, once Officer Atkinson found probable cause to arrest defendant (for identity theft) *during* the valid inventory search of defendant's vehicle, his continued search of the vehicle was independently justified both as a search incident to defendant's arrest, and additionally under the automobile exception to the Fourth Amendment's warrant requirement. See Opp'n at 15-19. However, the government does not cite authority specifically holding that a search that begins as an otherwise valid inventory search can effectively be converted into an automobile exception search or a search incident to an arrest. In any event, defendant rightly notes in her reply, and the government appears to concede, that the government's reliance upon these arguments "assume[s] that the initial entry and search of the vehicle was lawful." Reply at 15. In defendant's view, "[i]f the Court finds that the search of the vehicle was lawful, then it need not reach these two arguments [regarding the automobile exception and the search incident to an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

### IV. CONCLUSION

In accordance with the foregoing, defendant's motion to suppress evidence is hereby **DENIED**.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
|  | Initials of Deputy Clerk | | CMJ |

cc: Pretrial Services

---

arrest doctrine], because the whole search of the vehicle would be upheld." Id. In light of defendant's concession to this effect, and because the Court has concluded that Officer Atkinson properly initiated an inventory search pursuant to the community caretaker exception, the Court need not also decide whether the portion of the search conducted after location of the items in the orange duffel bag effectively converted the ongoing inventory search into a search independently justified by probable cause.